UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CAILYN ANNE KANGAS,<br><br>                    Plaintiff,<br><br>v.<br><br>SEANJAY WRIGHT, an individual; Former Ada County Sheriff GARY RANEY, individually and in his official capacity; ADA COUNTY, a Political Subdivision of the State of Idaho,<br><br>                    Defendants. | Case No. 1:15-cv-00577-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendant Sheriff Raney's motion to dismiss, and Defendant Wright's motion for joinder. (Dkt. 23, 29.) Defendant Raney argues Plaintiff's complaint fails to state a claim against him, either in his official capacity or in his individual capacity, and requests the Court deny leave to amend.

Having reviewed the briefs and the record, the Court finds the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding delay, and because the Court conclusively finds that the decisional process would not be

**MEMORANDUM DECISION AND ORDER  - 1**

significantly aided by oral argument, the motion will be decided on the record before this Court without oral argument. Dist. Idaho L. Rule 7.1(d).

## FACTS

According to the complaint, Plaintiff Cailyn Kangas was an inmate in the Ada County Jail between July 10, 2013, and November of 2014. She was convicted and sentenced on October 23, 2014, and remained at the Ada County Jail until her transfer to the Idaho State Correctional Facility in November of 2014.[1] At that time, Defendant Raney was the Ada County Sheriff, responsible for the management of the Ada County Jail. Defendant Wright was an Ada County Sheriff's Deputy responsible for supervising Kangas.

Kangas alleges that, upon her detention at the Jail, Wright began giving her special attention and granting her special privileges or favors, for the purpose of grooming her to provide sexual favors. Kangas contends that other Sheriff's deputies commented on the amount of time Wright was spending in the laundry facility while Kangas was working there. She alleges also that other inmates complained to Jail deputies about Wright's favorable treatment of Kangas. And last, she alleges that, in November of 2013, Deputy Hickam noticed Wright engaged in conversation with Kangas, and asked if he was interrupting something. In December of 2013, Kangas asserts Wright led her to a closet in the laundry facility out of view of security cameras to engage in sexual relations with her, and that this happened on three occasions.

---

[1] It appears Kangas is no longer incarcerated as of August of 2016. Her recent in forma pauperis application indicates she currently is employed by Pacific Crest Custom Cabinetry, and resides in Vancouver, Washington. (Dkt. 38.)

**MEMORANDUM DECISION AND ORDER - 2**

On December 31, 2013, several Ada County Sheriff deputies took Kangas to a holding cell where she wrote a statement detailing the sexual contact between her and Wright. Raney thereafter housed Kangas in the medical dorm for five months, and Kangas alleged she was deprived of privileges. Kangas was told she was being housed in the medical dorm for an indeterminate amount of time for her safety and to avoid publicity.

Based upon the facts in the complaint, it appears the events occurred while Kangas was a pretrial detainee at the Ada County Jail, since she was not convicted and sentenced until October 23, 2014, well after the December 2013 incidents happened.

Kangas asserts a policy-based Eighth Amendment claim against Ada County and Sheriff Raney in his official capacity for failure to train or supervise employees, and an Eighth and First Amendment claim against Sheriff Raney in his individual capacity. Kangas contends she was not provided information pertaining to her right to be free from sexual assault, and the policy of allowing female inmates to be supervised by one male officer during overnight shifts created an unreasonable risk of harm to female inmates. Kangas asserts also that the lack of training led to a failure of jail staff to investigate allegations of sexual abuse and favoritism on the part of Ada County Jail deputies. And finally, Kangas alleges Sheriff Raney retaliated against Kangas for reporting the unlawful sexual contact by housing her indefinitely in the medical dormitory and removing privileges.

Kangas next asserts several state law claims. First, she contends several provisions of the Idaho Constitution were violated, including the prohibition against cruel and

**MEMORANDUM DECISION AND ORDER - 3**

unusual punishment; unreasonable searches and seizures; due process; free speech; and the right to privacy. Next, she asserts two claims, as against Defendant Wright only—first, that his acts constituted negligence per se because his conduct constituted a violation of Idaho Code § 18-6110; and second, a claim for intentional infliction of emotional distress. As against all Defendants, which would include Sheriff Raney and Wright, Kangas brings claims of negligence and negligent infliction of emotional distress.[2]

## ANALYSIS

**1.     Motion to Dismiss Standards**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is appropriate if there is a lack of any cognizable legal theory or a failure to plead sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

A complaint fails to state a claim for relief if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In other words,

---

[2] These two claims are asserted against "all Defendants." The only individually named defendants remaining are Sheriff Raney and Wright, as the Ada County Commissioners named in the complaint were dismissed. (Dkt. 34, 35.) The motion to dismiss was not filed on behalf of Defendant Ada County.

**MEMORANDUM DECISION AND ORDER - 4**

although Rule 8 "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," the complaint has not stated a claim for relief that is plausible on its face. *Id.* (internal quotation marks omitted).

2.   **Standard of Law for Section 1983 Claims**

Kangas brings claims under 42 U.S.C. § 1983, the civil rights statute. To succeed on a claim under § 1983, a plaintiff must establish a violation of rights protected by the Constitution or created by federal statute proximately caused by the conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Prison officials are generally not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct.").

A.   *Entity Liability*

Kangas alleges Sheriff Raney violated the Eighth Amendment based upon a failure to train and supervise employees. Sheriff Raney asserts that the Eighth Amendment claim against him in his official capacity should be dismissed, because the suit for failure to train is properly brought against Ada County, not against Sheriff Raney. The complaint against Sheriff Raney in his official capacity, for failure to train, is properly dismissed, because the correct defendant is Ada County. *Pauls v. Green*, 816

**MEMORANDUM DECISION AND ORDER  - 5**

F.Supp.2d 961, 971 (D. Idaho 2011); *Cutler v. Kootenai County Sheriff's Dept.*, No. CV-08-193-N-EJL, 210 WL 2000042 *13 (D. Idaho May 19, 2010).

Kangas next asserts an Eighth Amendment policy claim against Ada County based upon a failure to train theory.[3] To prevail on her Section 1983 claim against Ada County, Kangas must meet the test articulated in *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 690-94 (1978). Under Monell, the requisite elements of a § 1983 claim against a municipality or private entity performing a state function are the following: (1) the plaintiff was deprived of a constitutional right; (2) the municipality or entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001). A municipality's failure to train or supervise its employees can be an unconstitutional "policy" for purposes of § 1983 liability. *City of Canton v. Harris*, 489 U.S. 378, 387 (1989).

Ada County argues Kangas's complaint is scarce on facts describing the policies, customs, or decisions that caused the constitutional violation here, and that no training was necessary for Wright to know he could not have sexual contact with an inmate. However, based upon the facts alleged, the Court can plausibly infer that Ada County may have a custom or policy that either encouraged Sheriff's deputies to pursue

---

[3] The parties addressed the policy claim against Ada County initially in the motion to dismiss filed on March 23, 2016, which was later dismissed by stipulation. However, Kangas addressed the arguments in her response brief, and Ada County and Sheriff Raney filed a joint reply. The Court will therefore address the arguments here, in the context of Sheriff Raney's motion to dismiss.

**MEMORANDUM DECISION AND ORDER - 6**

inappropriate relationships with female inmates, or failed to adequately train Sheriff deputies to recognize and report inappropriate behavior. Kangas alleges that Sheriff deputies commented on the amount of time Wright was spending alone with Kangas, observed his extra attention to her, and complained about the special treatment Wright gave her. Such conduct could be construed as sexual harassment, especially in the prison setting. *See Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000) (prisoners have an Eighth Amendment right to be free from sexual abuse). Based upon the alleged facts, the Court can plausibly infer either the Sheriff's deputies encouraged the behavior, or failed to recognize it as inappropriate and put an end to it, thereby setting in motion the events that culminated in the three sexual encounters between Kangas and Wright in December of 2013.

The Court therefore concludes the policy based claim against Ada County survives dismissal at this early stage of the proceedings.

### B. *Sheriff Raney's Individual Liability*

Next, Sheriff Raney argues the Eighth Amendment failure to protect and First Amendment retaliation claims asserted against him in his individual capacity are subject to dismissal, because the complaint does not allege facts supporting an allegation of direct participation or involvement in the sexual assault; and, the retaliation claim does not rise to a level of a constitutional violation. The Court will address each argument in turn.

**MEMORANDUM DECISION AND ORDER - 7**

### (1) *Eighth Amendment*

The Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment's Cruel and Unusual Punishment Clause, applies to pretrial detainees. *Bell v. Wolfish*, 441 U.S. 520, 537 n. 16 (1979). However, because pretrial detainees' rights under the Fourteenth Amendment are comparable to a prisoner's rights under the Eighth Amendment, the same standards apply. *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir.2010) (citing *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1243–44 (9th Cir. 2010)).

The Eighth Amendment to the United States Constitution protects prisoners against cruel and unusual punishment. To state a claim under the Eighth Amendment, Plaintiff must show that she is (or was) "incarcerated under conditions posing a substantial risk of serious harm," or that she has been deprived of "the minimal civilized measure of life's necessities" as a result of the defendant's actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). There is no question that sexual abuse by a prison guard is conduct which is "inconsistent with contemporary standards of decency and repugnant to the conscience of mankind," and therefore violates the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 327 (1986) (internal quotation marks omitted). Although threats and verbal abuse are generally insufficient to state a civil rights violation, sexual harassment can constitute "calculated harassment unrelated to prison needs," which also violates the Eighth Amendment. *Hudson v. Palmer*, 468 U.S. 517, 530 (1984).

An individual defendant "may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). This causal connection "can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Id.* at 1207-08 (internal quotation marks, citation, and alterations omitted).

In *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011), the United States Court of Appeals for the Ninth Circuit clarified how to show a causal connection between a supervisor's acts or inaction and an alleged violation. The causal connection may be established if the supervisor participated in: (1) "setting in motion a series of acts by others"; (2) "knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury"; (3) failing to act or improperly acting in "the training, supervision, or control of his subordinates"; (4) "acquiesc[ing] in the constitutional deprivation"; or (5) engaging in "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1205-09 (internal quotations and punctuation omitted).

Kangas complains of the one-jailer policy, which allowed Wright to supervise female inmates without another jailer present. She alleges Raney allowed this lack of oversight. However, absent a pattern of incidents that could constitute actual or

**MEMORANDUM DECISION AND ORDER  - 9**

constructive notice, a "one-jailer" policy, standing alone, would not obviously result in the sexual assault of an inmate. *Barney v. Pulsipher*, 143 F.3d 1299, 1311 (10th Cir. 1998). Nor does Kangas's general statement that "there is a pattern and practice" of female inmates being subjected to offensive touching comport with the facts alleged in the complaint—that this was an isolated incident that involved Kangas and Wright, not the female jail population as a whole. Kangas's complaint seeks to extrapolate from the instances involving only her to a general, pervasive atmosphere; yet, there are no facts to suggest such an atmosphere, with only her conclusory statement offered in support.

Next, Kangas asserts, in general terms, that Raney's acts created a risk of harm because he should have known of the harm which would result from placing an inadequately trained male staff member alone in an area where female inmates are subjected to sexual misconduct. Again, however, Kangas has not alleged any specific facts indicating what Raney knew or did not know about Wright's background or training. Further, a failure to train theory is tenuous in cases alleging sexual assault, because so many courts have held no training is required to teach employees not to commit sexual assaults. *Pauls v. Green*, 816 F.Supp.2d 961, 971 (D. Idaho 2011) (citing *Barney v. Pulsipher*, 143 F.3d 1299, 1308 (10th Cir. 1998) ("Specific or extensive training hardly seems necessary for a jailer to know that sexually assaulting inmates is inappropriate behavior."); *Andrews v. Fowler*, 98 F.3d 1069, 1077 (8th Cir. 1996) ("we cannot conclude that there was a patently obvious need for the city to specifically train officers not to rape young women"); *Campbell v. Anderson County*, 695 F.Supp.2d 764, 774 (E.D. Tenn. 2010) ("the proper course of conduct—refraining from sexual assault

**MEMORANDUM DECISION AND ORDER - 10**

and rape—is patent and obvious; structure[d] training programs are not required to instill it"); *Doe v. Dickenson*, 615 F.Supp.2d 1002, 1009 (D. Ariz. 2009) ("a municipality is not deliberately indifferent in failing to train law enforcement officers to not sexually assault those with whom they come into contact.").

Additionally, a single officer's lack of training will generally not be sufficient to establish liability. *City of Canton*, 489 U.S. at 390–91 ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.").

Despite the above discussion, the Court finds Kangas has stated a plausible claim against Sheriff Raney when considering the grooming behavior Kangas alleges other deputies knew about and commented to others about. Kangas alleges that, over the course of several months, Wright openly payed special attention to her, engaged her in private conversations, and granted her special privileges, all in view of other inmates and Jail personnel, who either complained about the behavior, openly observed the behavior, or commented about it. Under a liberal interpretation of these alleged facts, Wright's behavior could rise to the level of sexual harassment, which violates the Eighth Amendment. *Hudson v. Palmer*, 468 U.S. 517, 530 (1984). If Sheriff Raney failed to adequately train staff to recognize that Wright's behavior constituted conduct of a sexual nature that would lead to a hostile environment for female inmates, or if Sherriff's deputies brought the conduct to Sheriff Raney's attention and he failed to investigate,

such would form the basis of an Eighth Amendment claim against Sheriff Raney individually.

### (2)     *Retaliation*

A First Amendment retaliation claim must allege the following: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, . . . that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Although a "chilling effect on First Amendment rights" is enough to state an injury, *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001), "bare allegations of arbitrary retaliation" are insufficient to state a retaliation claim, *Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985). "A prisoner suing prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987) ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.").

But not every retaliatory act taken by an official can be considered an adverse action that chills the exercise of protected speech. The proper inquiry in determining whether a plaintiff has stated a viable retaliation claim "asks whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment

**MEMORANDUM DECISION AND ORDER  - 12**

activities." *Mendocino Envt'l Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (internal quotation marks omitted). If it would not, "the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (internal quotation marks omitted). *See also Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006) ("The [*de minimis*] standard achieves the proper balance between the need to recognize valid retaliation claims and the danger of federal courts embroiling themselves in every disciplinary act that occurs in state penal institutions.") (internal quotation marks and alteration omitted); *ACLU of Maryland, Inc. v. Wicomico County*, 999 F.2d 780, 786 n.6 (4th Cir. 1993) (per curiam) ("[T]hese § 1983 plaintiffs suffered no more than a *de minimis* inconvenience and . . . , on the facts of this case, such inconvenience does not constitute cognizable retaliation under the First Amendment.").

Here, Kangas alleges she was placed in the medical dorm without privileges for five months after reporting the sexual misconduct. Under a liberal interpretation of the alleged facts, a lengthy placement in the medical dormitory without privileges, upon reporting misconduct, is sufficient to state a viable retaliation claim against Sheriff Raney.

However, Kangas must prove that Sheriff Raney acted with retaliatory motives, and she must offer support for that theory beyond her subjective belief. *See Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985) (bare allegations of arbitrary retaliation are not enough by themselves to avoid dismissal). At present, it is not clear there was, in fact, a retaliatory motive, given Kangas indicates Sheriff's deputies informed her she was

**MEMORANDUM DECISION AND ORDER - 13**

being housed in the medical dormitory for her safety and due to news publicity. But, a five month stay may not be justifiable, depending upon the facts.

Therefore, the Court concludes the retaliation claim against Sheriff Raney in his individual capacity survives dismissal, especially at this early stage of these proceedings.

**3.     Idaho Constitutional Claims**

Kangas alleges Sheriff Raney violated the Idaho Constitution, specifically the prohibition against cruel and unusual punishment; the prohibition against unreasonable search and seizure; requirements of due process; freedom of speech; and the right to privacy. Sheriff Raney argues this Court has repeatedly refused to recognize a private right of action under the Idaho Constitution, while Kangas argues persuasive authority from Utah lends support to her argument that the Idaho Constitution contains self-executing provisions to support a cause of action.

The Court has repeatedly refused to recognize a "direct cause of action for violations of the Idaho Constitution." *Campbell v. City of Boise*, 2008 WL 2745121, at *1 (D. Idaho July 11, 2008); *see also Hancock v. Idaho Falls School Dist*. No. 91, 2006 WL 1207629, at *3 (D. Idaho May 2, 2006) (finding no direct cause of action under the Idaho Constitution nor any Idaho statute creating a cause of action for violations of the Idaho Constitution); *Sommer v. Elmore County*, 903 F.Supp.2d 1067, 1074 (D. Idaho 2012) (same); *Mott v. City of McCall*, 2007 WL 1430764, at *6 (D. Idaho May 14, 2007) (same); *Boren v. City of Nampa*, 2006 WL 2413840, at *10 (D. Idaho Aug. 18, 2006) (same). Kangas's reference to authority in Utah is insufficient to call these holdings into question.

**MEMORANDUM DECISION AND ORDER - 14**

Kangas's claims under the Idaho Constitution, which were brought against all Defendants, will be dismissed.

**4.     Surety Bond**

Sheriff Raney argues Kangas's state law claims are barred for failure to post the bond required by Idaho Code § 6-610, "[b]efore any civil action may be filed against any law enforcement officer...when such action arises out of, or in the course of the performance of his duty...." The bond is "a condition precedent" and requires dismissal of the case when the defendant objects to the failure to post a bond. Idaho Code § 6–610(5).

However, an indigent prisoner's state-law claims will not be barred for failure to post the requisite bond. *Pugsley v. Cole*, 2005 WL 1513112 at *7 (D. Idaho June 27, 2005); *Hyde v. Fisher*, 152 P.3d 653, 657 (Idaho Ct. App. 2007) (adopting *Pugsley*). The time to analyze a plaintiff's financial situation is when the case is filed. *Pauls v. Green*, 816 F.Supp.2d 961, 977 (D. Idaho 2011) (citing Idaho Code § 31-3220A(2)).

Here, Kangas was incarcerated at the time she filed her complaint on December 10, 2015. (Dkt. 7.) The Court granted Kangas's application for leave to proceed in forma pauperis and directed payments for the filing fee to be made from her prison account. Kangas's failure to file the bond does not mandate dismissal of her state law claims against Sheriff Raney.

Although Kangas filed a renewed application for leave to proceed in forma pauperis now that she has been released from prison, *Pauls* indicates the time to analyze the financial ability of the plaintiff is at the time the case was filed, which was done here. It was therefore unnecessary for her to file a renewed application. Nonetheless, the Court

**MEMORANDUM DECISION AND ORDER  - 15**

reviewed the application and finds Kangas continues to meet the indigence standard for granting in forma pauperis status. She indicates she earns gross pay of $1,500 per month, and has expenses of $1,300 per month, not including employment taxes withheld from her gross wages. She expects she will incur child support garnishments in the future. Kangas earns not much more than minimum wage, and has little discretionary income. No bond is required.[4]

## 5. Negligence and Negligent Infliction of Emotional Distress

The only two state law claims asserted against Sheriff Raney are the claims for negligence and negligent infliction of emotional distress.[5] Sheriff Raney relies upon Idaho Code § 6-904(3) as grounds for dismissal. Section 6-904(3) provides that "[a] governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent shall not be liable for any claim which…arises out of assault [or] battery…." "Malice within the definition of the Tort Claims Act means 'actual malice' which requires a wrongful act without justification combined with ill will." *Evans v. Twin Falls County*, 796 P.2d 87, 101 n.6 (Idaho 1990). The "criminal intent" provision "is satisfied if it is shown that the defendant knowingly performed the proscribed acts...." *State v. Gowin*, 554 P.2d 944, 945–46 (Idaho 1976);

---

[4] Sheriff Raney argues the fact Kangas "hired" an attorney indicates she has sufficient income to post a bond. There is nothing in the record indicating Kangas is compensating her attorney, however. The Court will not make such an assumption, considering an equally valid assumption may be that Kangas is receiving pro bono representation, or has a contingent fee arrangement with her attorney.

[5] These claims are asserted against "all Defendants." Ada County did not raise any arguments with respect to the negligence claims.

**MEMORANDUM DECISION AND ORDER - 16**

Sheriff Raney argues dismissal is proper, because Kangas's complaint does not allege facts indicating Sheriff Raney acted with malice or criminal intent, and the claims are properly understood as brought against Wright. For the same reasons the Court finds Kangas states a plausible Eighth Amendment and First Amendment retaliation claim, the Court finds Kangas may proceed at this time on her negligence claims. Under a liberal interpretation of the facts, Kangas has alleged that several Sheriff's deputies and other inmates knew of Wright's potentially harassing behavior exhibited toward Kangas over the course of several months. Then, upon learning of the sexual contact, Kangas alleges Sheriff Raney unjustifiably housed her in the medical dormitory for five months without privileges. Under the alleged facts, Kangas states a plausible claim that Sheriff Raney may have acted with malice.

## 6.     Defendant Wright's Joinder

Wright filed a motion for joinder in Defendants' motion to dismiss filed on March 23, 2016, not in Sheriff Raney's motion considered here. (Dkt. 21.) The motion was resolved by a stipulation of dismissal of Defendants Yzaguirre, Tibbs, and Case.

Wright offered no argument in support of dismissal of the claims asserted against him, and the Court will not presume that the arguments asserted by the Ada County Defendants apply equally to Wright. With the exception of the Idaho Constitutional claims asserted against Wright, which the Court addressed in Section 3, Wright's motion for joinder will be denied as moot.

## CONCLUSION

With the exception of Kangas's claims brought pursuant to the Idaho Constitution and the official capacity claim against Sheriff Raney, the allegations in the complaint, taken as true, are sufficient for the Court to plausibly draw the reasonable inference that Sheriff Raney and Ada County are liable for the misconduct alleged, as explained herein.

The Court notes that no scheduling order has been entered in this case. The parties are directed to meet and confer, and develop a litigation plan and discovery plan. The Court will schedule a telephonic scheduling conference with the parties via separate order, and the litigation plan and discovery plan will be due one week prior to the conference.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

1) Defendant Raney's Motion to Dismiss (Dkt. 23) is **GRANTED IN PART AND DENIED IN PART**.

2) Defendant Wright's Motion for Joinder (Dkt. 29) is **DENIED as MOOT**.

3) Plaintiff's Motion for In Forma Pauperis (Dkt. 38) is **GRANTED**.

Dated: **November 04, 2016**

Honorable Candy W. Dale
United States Magistrate Judge